

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-2008

# Kosak v. Dir BCIS

Precedential or Non-Precedential: Precedential

Docket No. 06-4055

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Kosak v. Dir BCIS" (2008). *2008 Decisions*. Paper 1352.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1352

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4055
_____

WAN-SWIN SUSAN KOSAK,

Appellant

v.

EDUARDO AGUIRRE, JR., Director of U.S.
Citizenship and Immigration Services; MAURA
HARTY, Assistant Secretary for Consular Affairs;
ROBERT DEVINE, Acting Deputy Director of U.S.
Citizenship and Immigration Services;
MICHAEL CHERTOFF, Secretary of the Department of
Homeland Security;
CONDOLEZZA RICE, Secretary of State for
the United States;
THE BOARD OF IMMIGRATION APPEALS,
Executive Office of Immigration Review, U.S.
Department of Justice

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No.: 05-cv-00045
District Judge: Honorable Jan E. Dubois

———————

Argued December 6, 2007
Before: McKEE, CHAGARES and
HARDIMAN, *Circuit Judges*.

(Filed: March 6, 2008)

Joseph C. Hohenstein (Argued)
James J. Orlow
Orlow & Orlow
620 Chestnut Street
Suite 656
Philadelphia, PA 19106
        *Attorneys for Appellant*

Mary C. Frye (Argued)
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
        *Attorney for Appellees*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

In this case we review the Board of Immigration Appeals' construction of Section 203(a)(4) of the Immigration and Nationality Act, which grants a visa preference to "[q]ualified immigrants who are the brothers or sisters of citizens of the United States." 8 U.S.C. § 1153(a)(4). The question presented is whether the District Court erred in according *Chevron* deference to the BIA's decision that adopted children may not invoke this preference in favor of their biological siblings. We hold that it did not.

I.

Appellant Wan-Swin Kosak, a native of Taiwan, was adopted by her aunt and uncle, both of whom are United States citizens. Kosak entered the United States in 1981 as a lawful permanent resident. In 1990 she filed an I-130 Petition for Alien Relative pursuant to 8 U.S.C. § 1153(a)(4) on behalf of her biological sister, Wan-Gin Hwang. The Vermont Service Center (VSC) of the Immigration and Naturalization Service (INS) granted the Petition, but when a visa became available for Hwang in 2002, the U.S. Consulate in Taiwan declined to issue it. The Consulate returned Kosak's Petition to the VSC and recommended revocation because it believed an adopted child could not confer immigration benefits on her natural sibling. In

3

response to the Consulate's actions, Kosak filed suit in the United States District Court for the Eastern District of Pennsylvania. Meanwhile, after the VSC initially issued a notice of intent to revoke its approval of Kosak's I-130 Petition, it later reaffirmed its approval on March 16, 2004. Accordingly, Kosak voluntarily dismissed her federal lawsuit. Before Wan-Gin Hwang received her visa, however, the VSC changed course, and on June 24, 2005, it revoked its re-approval of Kosak's I-130 Petition. Kosak appealed the revocation, and the BIA dismissed her appeal in a per curiam opinion citing *Matter of Li*, 20 I&N Dec. 700 (BIA 1993).

Kosak appealed the BIA's decision to the District Court and filed a motion for summary judgment, arguing that the BIA's decision was erroneous. The government filed its own summary judgment motion, which the District Court granted, holding that the BIA's interpretation of 8 U.S.C. § 1153(a)(4) was entitled to *Chevron* deference. *Kosak v. Devine*, 439 F. Supp. 2d 410, 417-18 (E.D. Pa. 2006). Kosak appeals the District Court's decision.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we review the BIA's interpretation of the INA pursuant to *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984). *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999). If "Congress has directly spoken to the precise question at issue," its intent controls. *Chevron*, 467 U.S. at 842. Where the statute is "silent or ambiguous with respect to the specific issue," however, we will uphold the BIA's

4

interpretation so long as it is "based on a permissible construction of the statute." *Id*. at 843.

Kosak first claims that the unambiguous language of the statute entitles her to relief. She argues that Congress intended the "normal and natural" definitions of "brothers" and "sisters" to control, namely, persons having at least one parent in common. Kosak asserts that both she and Hwang are "child[ren]" of their biological "parent[s]" as those terms are defined in 8 U.S.C. §§ 1101(b)(1) and (2), and should therefore be recognized as "sisters" for purposes of § 1153(a)(4). A BIA District Director adopted a similar position in *Matter of Fujii*, 12 I&N Dec. 495, 496 (D.D. 1967) (The "relationship of brother and sister created by the legitimate birth of the petitioner and beneficiary to the same parents" is not destroyed "by the subsequent adoption of the latter.").

The government counters that because adoption severs the legal relationship between the natural parent/s and child for immigration purposes, 8 U.S.C. § 1101(b)(1)(E)(i), it also severs the relationship between natural siblings. In support of its position, the government cites two BIA decisions and an opinion of the Court of Appeals for the Ninth Circuit. *Li*, 20 I&N Dec. at 703 (petitioner's adoption severed relationship with natural sibling because they no longer shared common parents); *In re Xiu Hong Li*, 21 I&N Dec. 13, 17-18 (BIA 1995) (adoption severed relationship with natural parents); *Young v. Reno*, 114 F.3d 879, 888 (9th Cir. 1997) (finding permissible the INS's conclusion that adoption severed the legal relationship between an adopted child and her natural siblings).

5

Both Kosak and the government have advanced plausible constructions of the statutory provisions at issue. As the prolixity of the proceedings below suggests, the meaning of § 1153(a)(4) cannot be resolved with reference to Congress's "unambiguously expressed intent" in the statutory language. *Chevron*, 467 U.S. at 843. Because the statute does not define "brothers" or "sisters," Congress has not "directly spoken to the precise question at issue." *Id*. at 842. Moreover, there is nothing in the legislative history of § 1153(a)(4) to suggest that Congress contemplated the effect of adoption on the sibling relationship. *Young*, 114 F.3d at 886. Although Congress clearly intended adoption to sever the parent-child relationship, 8 U.S.C. § 1101(b)(1)(E)(i), there is no similar provision regarding the sibling relationship. In the face of this Congressional silence and ambiguity, we defer to the BIA's construction of § 1153(a)(4) so long as it is a "permissible interpretation of the statute." *Nat'l Small Shipments Traffic Conf., Inc. v. United States*, 887 F.2d 443, 445 (3d Cir. 1989) (quoting *Chevron*, 467 U.S. at 843) (internal quotation omitted).

## III.

To find the BIA's interpretation of § 1153(a)(4) "permissible," we "need not conclude that [its] construction was the only one it permissibly could have adopted," nor that we would have adopted the same interpretation. *Chevron*, 467 U.S. at 843 n.11. In fact, we may not substitute our own construction of § 1153(a)(4) "for a reasonable interpretation" of the BIA. *Id*. at 844. So long as the agency's construction "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute," we will not

6

disturb it. *Id*. at 845 (quoting *United States v. Shimer*, 367 U.S. 374, 383 (1961)).

Kosak argues that the BIA's interpretation was impermissible because: (1) "determining an individual's 'status' as a parent" is not within Congress's or the BIA's immigration authority, and (2) denying preferential visa status to the natural sibling of an adopted child is unnecessary to enforce the "Congressional bar to natural parents receiving immigration status from a child they put up for adoption." We find these arguments unpersuasive.

First, as Kosak concedes, Congress and the BIA may define the parameters of the parent-child relationship for immigration purposes. In exercising this authority, Congress specifically provided that "no natural parent of any . . . adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege or status under this chapter." 8 U.S.C. § 1101(b)(1)(E)(i). Kosak argues that the word "status" refers only to the parent's "immigration status," and that nothing in the INA terminates the parent's "natural," "family law" status as biological parent. Accordingly, Kosak urges us to use biological status to define the sibling relationship for purposes of § 1153(a)(4).

Contrary to Kosak's argument, § 1153(a)(4) requires the BIA to define the relationship between an adopted child and her natural sibling only to determine the latter's *immigration status*. Because the BIA defines siblings as children of at least one common parent, *Matter of Kong*, 17 I&N Dec. 151, 153 (BIA 1979), the BIA reasonably consulted the INA's definitions of

7

"child" and "parent." 8 U.S.C. §§ 1101(b)(1), (2). Recognizing that adoption terminates the natural parent-child relationship pursuant to § 1101(b)(1)(E)(i), the BIA concluded that adoption also terminates the natural sibling relationship *for immigration purposes*. These determinations are well within the BIA's purview regarding immigration matters and do not affect the biological status of siblings.

Second, Kosak argues that the BIA need not have held that adoption severs the natural sibling relationship to give full effect to the prohibition against natural parents receiving immigration benefits through children they put up for adoption. *See* 8 U.S.C. § 1101(b)(1)(E)(i). Instead, Kosak suggests that the government "track" natural parents to prevent the "scenario specifically prohibited by Congress whereby adopted children obtain preferences for natural siblings who then obtain preferences for natural parents." *Young*, 114 F.3d at 887.

Initially, we question the feasibility of the tracking system Kosak proffers because once the natural sibling becomes a United States citizen, she enjoys the same rights as any American, including the right to seek visas for her parents. 8 U.S.C. § 1151(b)(2)(A)(i). But even if Kosak's proposal were feasible, it is not the only permissible solution; the BIA's construction of the statute is equally permissible.

Indeed, the BIA's construction represents a "reasonable accommodation" of the "conflicting policies" of keeping families together, *Young*, 114 F.3d at 886, and preventing natural parents from obtaining immigration benefits through children they put up for adoption. *Id*. at 887; *Chevron*, 467 U.S.

8

at 844. Consistent with its precedent, the BIA concluded that once an adoption occurs, the family to be unified is the adoptive family, while the natural family, including siblings, may not receive immigration benefits by virtue of the adoption. *See Xiu Hong Li*, 21 I&N Dec. at 17 (citing *Li*, 20 I&N Dec. at 703) ("[A]n alien should be recognized for immigration purposes as a child of his natural parents or of his adoptive parents, but not of both.").

IV.

Kosak also argues that the BIA's interpretation of § 1153(a)(4) has changed too many times to be accorded any deference. Indeed, the Supreme Court has stated that "[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 447 n.30 (1987) (quoting *Watt v. Alaska*, 451 U.S. 259, 273 (1981)). But this principle of law applies only to final agency interpretations, not preliminary or deliberative ones. *See id.* (focusing on "the inconsistency of the positions *the BIA* has taken *through the years*," not on conflicting preliminary decisions subject to BIA review) (emphasis added); *Exxon Corp. v. Lujan*, 970 F.2d 757, 762 (10th Cir. 1992) (distinguishing the agency's "three different interpretations" of the relevant statute "over a number of years" in *Cardoza-Fonseca* from a single prior decision of a regional office of the Bureau of Land Management that lacked precedential significance).

9

Here, as Kosak notes, her Petition was transmitted back and forth between INS agencies and the State Department for several years before the VSC finally decided to revoke its initial grant of her Petition. That final resolution alone is before us, *see* 5 U.S.C. § 704, and we find it consistent with settled BIA precedent that pre-dated Kosak's I-130 petition by over a decade. *See Young*, 114 F.3d at 887 (finding consistent the BIA's decisions regarding the sibling relationship from the 1979 *Kong* decision forward). Indeed, the BIA has held that the sibling relationship is determined by reference to a common parent, *Kong*, 17 I&N Dec. at 153; that adoption severs the relationship between the natural parent and child, *Xiu Hong Li*, 21 I&N Dec. at 17-18; and that by severing the natural parent-child relationship, adoption severs the relationship between natural siblings for immigration purposes. *Li*, 20 I&N Dec. at 706. The only contrary authority, *Fujii*, 12 I&N Dec. at 496-97, is a 1967 non-precedential decision of a BIA District Director that the BIA has long since abrogated. *See* 8 C.F.R. § 1003.1(g); *see also Kong*, 17 I&N Dec. at 153; *Li*, 20 I&N Dec. at 706. Therefore, we find nothing inconsistent about the BIA's jurisprudence on the effect of adoption on the sibling relationship and we accord it the requisite deference.

V.

In sum, because § 1153(a)(4) is silent with regard to the meaning of "brother" and "sister," we hold that the BIA's decision that adopted children may not invoke this visa preference in favor of their biological siblings is a permissible construction of the statute that is entitled to deference under

10

*Chevron.*  Accordingly, we will affirm the judgment of the District Court.